EMERICK & DUNCAN CO. v. HASCY et al.*

(Circuit Court of Appeals, Ninth Circuit. June 18, 1906.)

No. 1,284.

STIPULATIONS—PERFORMANCE—RESCISSION—RETURN OF BENEFITS.

Pursuant to a stipulation defendant confessed the bill by failing to appear and perform other conditions all of which involved more or less cost and trouble and some of which could not have been compelled by any decree that could have been rendered in the case. Plaintiffs procured their decree on the stipulation after which they asked the court to relieve them from the only thing they agreed to do, to wit, to satisfy the judgment in so far as it awarded damages, profits, and costs, because of defendant's alleged failure to fully perform one of the conditions of the stipulation. Held, that in the absence of an offer to put defendant in statu quo by permitting a vacation of defendant's default and the interlocutory decree to the end that defendant might contest the suit on the merits, plaintiffs were bound to satisfy their judgment for damages, etc.

*Rehearing denied October 29, 1906.

Appeal from the Circuit Court of the United States for the Northern District of California.

The appellees commenced this suit on the 4th day of April, 1904, in the United States Circuit Court for the Northern District of California, against the appellant, then doing business under the corporate name of W. W. Adams & Co., alleging in their bill, among other things, in substance, that the complainants and their predecessors in interest have continuously for a period of over 70 years been engaged in the manufacturing and selling of brushes throughout the United States, under the firm name and style of J. J. Adams & Co.; that by reason of the care, skill, and fidelity used by the complainants and their predecessors their brushes have acquired a great reputation throughout the United States, so that they are, and for many years past have been, universally known and described by the trade and users of brushes throughout the United States simply as the "Adams Brush," and that the production and sale of their brushes has from time to time greatly increased in magnitude, and that a large demand for them has been created and exists under and by the name of the "Adams Brush" throughout the United States, and elsewhere, which is a source of great profit to the complainants; that in order that their brushes should be universally known and recognized, the complainants and their predecessors have been in the habit of stamping upon them either the word "Adams" or the words "J. J. Adams," and that those words appearing upon a brush are now, and for many years have been recognized by buyers and consumers throughout the United States as indicating "The Adams Brush" so-called, and as the product of the complainants and their predecessors exclusively. That for more than 70 years the complainants and their predecessors in business have held and enjoyed exclusively the reputation of being the makers of the "Adams Brush," and have been in the sole and undisturbed possession and enjoyment of the use of the said trade-names and trade-marks "Adams" and "J. J. Adams," and that their exclusive rights in the premises have been universally admitted and recognized by the trade and public, without dissent, so that when in a few instances there has been a use of the said trade-names or trade-marks by others, such use has been speedily discontinued on demand, or suppressed and enjoined by legal proceedings; that in the year 1902 the defendants Emerick, Williams, Maunder, Hill, and William W. Adams, were severally engaged as dealers and jobbers in or salesmen of articles of merchandise in connection with which brushes are commonly sold, and were each and all fully informed of the great reputation of the "Adams Brush," and the large trade therein enjoyed by the complainants, and that the defendants wrongfully and fraudulently intending to engage in the business of selling brushes as and for the "Adams Brush," but not manufactured or sold by the complainants, on or about August 2, 1902, organized a corporation under and by virtue of the laws of the state of California, ostensibly, as declared by the articles of incorporation, "to do a general mercantile business, to buy and sell goods of all kinds and classes, to enter, buy, deal in, and mortgage real estate, to use, deal in, buy, and speculate in stocks, bonds and other securities," but in reality to trade upon the reputation of the complainants, and fraudulently abstract from them a large part of good will of their trade, and that the defendants, in order to mislead the public and consumers, and to cause confusion and mistake in the minds of the public and of the trade, and in order that the public and consumers might, by reason of the similarity of the two names be misled to purchase their product supposing the same to be the complainants' manufacture, adopted the corporate name of W. W. Adams & Co.; that the defendant W. W. Adams was given by the other defendants five shares of the capital stock of that corporation, in order to exhibit some color of right in the adoption of said corporate name; that the defendant W. W. Adams & Co. is the corporation thus organized and existing, and that it carries on the business of selling brushes throughout the state of California and elsewhere which are stamped with the words "W. W. Adams & Co." in fraudulent imitation of the complainants' trade-mark and trade-name, and which are sold as the "Adams Brush," but are not manufactured or sold by or for the complainants.

146 F.—44

The complainants prayed, among other things, for a writ enjoining the defendants, and each of them, from directly or indirectly selling, offering for sale, or putting up any brushes not made by the complainants upon which shall be placed, stamped, or applied in any form or manner, the word "Adam," or the word "Adams," or the words "J. J. Adams," or the words "W. W. Adams," or any word like or substantially like the word "Adams" in sound or appearance, and from in any form or manner making use of the word "Adam," or "Adams," or any word substantially like the words "Adams," in connection with the manufacture or sale or offering for sale, of any brushes not made by the complainants; that the defendants be directed to forthwith apply to the superior court of the state of California in and for the county in which the articles of incorporation of the defendant W. W. Adams & Co. were originally filed or in which the property of such corporation is situated, for a change of its corporate name to another name in no manner like the firm name of the complainants, and to diligently pursue such application until they shall obtain a proper order of such court authorizing such change of name, in pursuance of the statutes of that state; that the defendants be required to deliver up to be destroyed all brushes in their possession or under their control in any manner designed to imitate the complainants' brushes, or capable of being substituted or sold as and for the complainants' brushes, and that an accounting be had and the defendants be adjudged to pay all such damages and profits to the complainants as may be shown, with costs of suit.

Before the time fixed for the appearance of the defendants in the suit, negotiations for a settlement thereof were initiated by the defendants and culminated in the following written stipulation, to wit: "It is hereby stipulated and agreed that this suit shall be settled in the manner following; that is to say: (1) The defendant corporation will immediately commence, and diligently pursue proceedings to change its corporate name from W. W. Adams & Co. to some name which shall not contain the word 'Adams' or 'Adam.' (2) The defendant corporation will, in such manner as shall be satisfactory to complainants, obliterate or remove from all brushes that it now has in stock the words 'W. W. Adams & Co.' and the words 'Adams' or 'Adam.' (3) The defendant corporation will furnish to complainants a true list of the names and addresses of all the manufacturers of the brushes heretofore bought by it, and of all its customers for brushes heretofore sold by it. (4) The defendant corporation will furnish to the complainants a true list of the names and addresses of all its officers and stockholders. (5) The defendant corporation will confess the bill of complaint by failing to appear in response to the subpœna. (6) The complainants shall thereupon take a decree in all respects in accordance to the prayer of the complaint, but immediately on the entry of the decree will mark the same fully satisfied in respect to damages, profits, and costs."

The record shows that the appellant, who was defendant in the court below, procured its corporate name to be changed from "W. W. Adams & Co." to "Emerick & Duncan Company," and removed from all of its brushes in stock the words objected to by the complainants, furnished to the complainants a list of appellant's officers and stockholders, and a "list of manufacturers whom we are buying paint brushes from," and of its customers who had bought brushes from it, which list of manufacturers, however, did not show, as the appellees claim the stipulation required it to do, the names of the manufacturers who had stamped "W. W. Adams & Co." upon the appellant's brushes. The list was conveyed to the complainants' solicitor by letter dated September 19, 1904, and the defendant, having confessed the bill of complaint by failing to appear in response to the subpœna, an interlocutory decree was entered on the 7th day of October, 1904, for the complainants, granting the relief prayed for by them, and referring the matter to the standing master to take an account.

A copy of the interlocutory decree, and of the letter containing the list of the stockholders and directors of the defendant W. W. Adams & Co., and the list of manufacturers from whom that company had bought its brushes, having been sent to the complainants by its solicitor, the complainants

objected to such list, upon the ground that it did not state that such manufacturers had supplied the defendant company with brushes stamped "W. W. Adams & Co.," whereupon the solicitor of the complainants demanded of the appellant a list of the manufacturers who had stamped its brushes "W. W. Adams & Co.," with which demand the appellant refused to comply, claiming, among other things, that it had already fully complied with the requirements of the stipulation. The complainants thereupon, on the 10th day of November, 1904, proceeded with an accounting before the master, in accordance with the provisions of the interlocutory decree, whereupon the following proceedings were had:

"Mr. Jacobs (Counsel for Defendants): If your honor please, as a preliminary objection to these proceedings, I introduce in evidence this stipulation by Mr. Wright. The part thereof to which I particularly desire to refer (Reads clauses 5 and 6 of the stipulation). Now, if the decree is here, your honor will see that the only thing for which it was referred to your honor was: 'That it be referred to E. H. Heacock, Esq., standing master in chancery in this court, to take an account of the damages which complainants J. J. Adams & Co., have sustained and the profits which defendants W. W. Adams & Co., its officers and stockholders, have made by the practices set forth in the bill of complaint, and report the same to this court, and that said complainant shall have and recover of and from said defendant the damages and profits which shall be found by the said master, and have execution therefor.' This decree was made, of course, without the filing of this stipulation. This stipulation has never been filed, as a matter of fact. I will file it now. So that the filing of this stipulation, the genuineness of which is admitted, renders futile, nugatory, and valueless and a waste of time, the taking of testimony that your honor alone is authorized to take. In other words, your honor is authorized to do that and nothing else. Bates' Equity Procedure, 746. (Argument.) The situation is simply this: I ask at this time a continuance for a week; that is, past the first law and motion day of the court, at which time I will ask the court to direct the counsel to comply with this stipulation, and order a satisfaction entered in respect to the damages, costs, and profits; and I think the request is reasonable under the circumstances. The stipulation was not before the court when it made the decree, otherwise possibly the decree might have been different. But I do not even question that. I do not care what the form of the decree is. The master is not going to take his time and the time of the parties doing a futile act. (After argument by Mr. Wright.) Mr. Wright, do you admit that the first provision of the stipulation has been complied with? That is, that the corporate name has been changed?

"Mr. Wright: Yes, that has.

"Mr. Jacobs: Do you admit that the second provision of the stipulation has been complied with; that is, the obliteration of the name of 'W. W. Adams & Co.,' and the words 'Adams' and 'Adam' from the brushes?

"Mr. Wright: I have no means of knowing whether that has been complied with or not.

"Mr. Jacobs: Don't you know that your company saw that it was done?

"Mr. Wright: I do not.

"Mr. Jacobs: Did not Mr. Brawner so inform you?

"Mr. Wright: I decline to answer any such question. It is not a proper question to put to me. But I will say that he did not inform me to that effect. Mr. Brawner informed me to the effect that he had seen the defendant corporation in the act of apparently removing the name from some brushes, but Mr. Brawner never informed me as to whether that portion of the stipulation had been complied with. That is a frank answer.

"Mr. Jacobs: The third is that the defendant corporation will furnish to the complainants a true list of the names and addresses of the manufacturers of brushes heretofore bought by the defendants and the brushes heretofore sold by it. Now do you deny that the corporation defendant furnished you a list which purported to be a true list?

"Mr. Wright: They furnished me a list which clearly, upon its face, was an evasion.

"Mr. Jacobs: Have you that list here?

"Mr. Wright: I think I have.

"Mr. Jacobs: Will you be good enough to produce it?

"Mr. Wright: No, I decline to produce it, on the ground that you are intending to make a motion in court, as you say, and I will produce it there and explain my reasons. I will say, furthermore, that these questions are answered by me purely as a matter of civility.

"The Master (after argument) : I take it that that stipulation is to be considered by the master as one whole. It is by virtue of a decree that I am to take an accounting. By virtue of the last clause of that stipulation I am to do a useless act in taking the accounting if that stipulation has been carried out. Now, if, in fact, each and every of the objects incorporated in the stipulation has not been carried out in good faith, the stipulation in my judgment has and no part of it has, any binding effect, and therefore the master would not be doing a useless act in proceeding with the accounting.

"Mr. Wright (after argument) : Mr. Duncan, the president of the defendant corporation, and Mr. Emerick, the secretary, each requested me to take proceedings upon the ground that they did not like to disclose the names of the manufacturers. They asked me to take these proceedings to force a disclosure of the names.

"The Master (after argument) : I will continue the case for one week, and, in the meantime, counsel can take such steps as they may deem advisable. At that time, unless I am otherwise directed by the court, I shall proceed with the accounting. (It is stipulated by the respective parties that if the master is still authorized to proceed with the accounting after the making of such motion before the court as counsel for defendant proposes to make, that the master shall proceed with such accounting within five days after the court shall have decided the motion made by defendant's counsel, without notice except notice of the decision of the motion.)

"Mr. Jacobs: If your honor please, if Mr. Wright is correct in his understanding as to the attitude of the parties defendant, I will merely not appear, but will let the proceedings be had before the master in my absence.

"Mr. Wright: I would prefer that your honor postpone the hearing to a day certain, and direct the witness to be here, unless otherwise relieved by order of court.

"The Master: Then let the witness be sworn."

The secretary of the defendant corporation was thereupon sworn as a witness, and the hearing continued and resumed on the 21st day of November, 1904, but without any further appearance on the part of counsel for defendants. The testimony of the secretary of the defendant corporation before the master disclosed the names of the manufacturers who had stamped "W. W. Adams & Co." on the brushes bought by them and also that for the 4,505 5-12 dozen brushes marked "W. W. Adams & Co.," which it had bought it paid $16,690.68, of which brushes it sold 3,809 5-12 dozen for $19,286.53, and that the defendant corporation paid the freight on the brushes so purchased by it, amounting to 5 per cent. on their cost.

Concluding his testimony before the master, the secretary of the defendant corporation was asked by counsel for the complainants: "Q. Have you made a statement of the profits of W. W. Adams & Co., the defendant corporation, upon all the brushes sold by you which bore the name 'W. W. Adams & Co.?' A. Yes, sir. Q. Have you got that figure? A. Yes. sir. Q. How much was it? A. Four thousand one hundred and ninety-one dollars and sixty-five cents. Q. Then I understand you to say you admit the defendant corporation W. W. Adams & Co. made a profit of how much? A. Four thousand one hundred and ninety-one dollars and eighty-five cents. Q. On the brushes sold by it bearing the name 'W. W. Adams & Co?' A. Cross (gross) profit; yes, sir.

"Mr. Wright: Complainant does not ask the master to consider the question of damages other than profits."

The proceedings before the master were concluded November 30, 1904, and on the 7th day of December, thereafter, he made his report, stating the profits to be $4,468, and that the appellees had waived an inquiry as to dam-

ages. No exception to the master's report was filed, nor was the matter in any way brought to the attention of the court by either party until April 25, 1905. Some time after the time within which exceptions to the report might have been filed, counsel for the appellees demanded of the appellant payment of the costs of the accounting, amounting to $72.90, but not the amount of profits reported by the master.

On the 25th day of April, 1905, complainants' counsel gave notice of a motion for a final decree in the cause for the complainants and against the defendants, for the sum of $4,468, the profits reported by the master to have been made by the defendants by the practices set forth in the complaint, and for the costs, and to be relieved from that part of the stipulation whereby the complainants agreed immediately on the entry of the decree to mark the same fully satisfied in respect to damages, profits, and costs; so that notwithstanding such stipulation, the complainants might have execution for the profits found by the master, and costs, the grounds of such motion being: "(1) That the master's report in respect to such profits has been on file more than 30 days, and no exceptions thereto have been filed. (2) That the stipulation of the complainants to waive damages, profits, and costs was made on the faith of statements by the defendants that they had made little or no profits by the practices set forth in the bill of complaint, which statements were untrue. (3) That the stipulation of the complainants to waive damages, profits, and costs was made on the faith of a promise by the defendants to furnish a true list of the names and addresses of all the manufacturers of brushes theretofore bought by the defendants bearing the name 'Adams' or 'W. W. Adams' stamped on them; which promise the defendants afterward refused to perform. (4) That by the refusal of the defendants to perform their said promise the complainants have been subjected to unnecessary costs and charges. (5) That there is a failure of consideration for the stipulation made by complainants."

The appellants did not, either in making the motion or at any time, restore or offer to restore or make compensation for anything they had received under the stipulation; or to set aside the decree entered upon the default provided for by the stipulation. The motion was granted without conditions, and a final decree entered awarding the injunction as prayed for, and judgment for the profits reported by the master, and providing "that the complainants * * * be not required to enter satisfaction of this decree as provided by the sixth clause of the stipulation filed herein upon the 3d day of December, 1904."

The appeal is from that decree.

Frohman & Jacobs and Jesse W. Lilienthal, for appellant. John A. Wright for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

On the hearing of the appellees' motion in the court below, conflicting affidavits were presented on behalf of the respective parties, that on behalf of the appellees' tending to show, among other things, that in the negotiations leading up to the making of the stipulation, the appellant represented to the appellees' counsel that it had made little or no profits by the sale of the brushes in question, and that the appellant was so poor that a judgment against it for damages, profits, and costs would be worthless, and that the appellees' stipulation to waive damages, profits, and costs was made in reliance upon the truth of those representations.

The affidavits on behalf of the appellant are to the effect that no such representations were made, and, further that if made they were substantially true, the affidavit of Emerick being to the effect that while the gross profits from the sale of the brushes stamped "W. W. Adams & Co.," were as stated in his testimony before the master $4,191.65; that the net profits of the appellant during the two years and more that they were engaged in selling the brushes, from all brushes sold by it, were $466.25, which amount includes the sale of brushes of other kinds, and not stamped "W. W. Adams & Co." The affidavits filed on behalf of the appellant also tended to show that the defendants composing the corporation called "W. W. Adams & Co." in the negotiations leading up to the stipulation, insisted that they were not guilty of the frauds alleged against them in the bill, and had the right to sell the brushes they did sell, but represented that they were poor, and but starting in business, and could not afford to enter into costly litigation, and that those considerations induced them to enter into the stipulation in question. We do not find it necessary to determine those conflicting questions of fact; for the stipulation was, as a matter of fact, entered into, pursuant to the provisions of which the appellant failed to enter its appearance to the suit, by reason of which default a decree was passed without contest for the complainant. Nor is it denied on the part of the appellees that, pursuant to the provisions of the stipulation, the appellant procured its corporate name to be changed from "W. W. Adams & Co." to "Emerick & Duncan Company," not only necessarily involving the appellant in expense, but an act deemed by the appellees valuable to them, and which they could not have compelled by their suit; and, further, that the appellant removed from the brushes in their possession the name "Adams" in a manner satisfactory to the appellees, furnished the appellees with a list of its customers to whom it had sold brushes, and a list of the manufacturers from whom it bought the brushes. It is insisted on the part of the appellees that the latter list was incomplete in that it did not give the names of the manufacturers who placed the objectionable stamp on the brushes. The stipulation in that regard is this:

"The defendant corporation will furnish to the complainants a true list of the names and addresses of all the manufacturers of the brushes heretofore bought by it, and of all its customers for brushes heretofore sold by it."

Obviously there is nothing in this language requiring the appellant to furnish the appellees with the names of the manufacturers who stamped the brushes. Assuming that it was the intention of the parties that the stipulation should have so provided, and that the appellees' counsel, who, it appears, drafted the stipulation, omitted such a provision by mistake or through inadvertence, it affords no justification to the court on this appeal, or to the court below on the motion made to it, to read into the instrument an agreement not there found. We have, then, a stipulation of the parties, pursuant to which the appellant confessed the averments of the bill by failing to enter an appearance thereto, and pursuant to which it performed other conditions of the stipulation, all of which involved more or less

cost and trouble, and some of which could not have been compelled by any decree that could have been rendered in the case, upon which stipulation alone the appellees procured their decree against the appellant. Procuring, as they did, that decree upon and by virtue of the stipulation, the appellees, without restoring or offering to restore what they had received thereunder, asked the court below to relieve them from doing the one and only thing they agreed to do as a consideration for those benefits, namely, their obligation to satisfy the judgment in so far as it awarded them damages, profits, and costs. And the court below, by its final decree here appealed from, gave them that relief.

It is a fundamental principle of equity that one party to an agreement, by whatever name called, whether contract, stipulation, or anything else, cannot be relieved of its burdens while holding on to its benefits. That is exactly what the appellees sought to do, and what they were permitted to do by the court below. They did not offer to put the appellant in statu quo, even to the extent that it was possible to do so; they did not offer to permit the appellant's default to be set aside and the interlocutory decree to be vacated, to the end that the appellant might, if it elected to do so, contest the suit on the merits; but, holding on to the substantial advantages secured by virtue of the stipulation, they asked to be, and were, by the judgment appealed from, relieved of the one and only obligation they agreed to perform as a consideration for the benefits thus received.

In this there was manifest error, for which the judgment appealed from must be, and is, reversed, with instructions to strike out that portion thereof providing "that the complainants * * * be not required to enter satisfaction of this decree, as provided by the sixth clause of the stipulation filed herein upon the 3d day of December, 1904."